Please the court. My name is Sean Conley together with Alan Jocelyn. I represent the plaintiff property holders in their constitutional claims. Plaintiff's properties included fee simple and leasehold interests in both surface and mineral properties. Before November 1998 those properties worth many millions of dollars. That month, however, in an unprecedented initiative, Montana precluded the only economically viable use of those properties. That initiative, I-137, destroyed all value of those properties and according to the claim raised in federal court, constituted a taking of the plaintiff's properties. The claim was based on Supreme Court precedent dating back as far as 1922 when Justice Holmes in the Pennsylvania Cole case said that a regulation that goes too far and takes all property and removes all the value of property constitutes a taking, even though there's not a physical occupation. That principle was reaffirmed in the 1992 Lucas opinion and reaffirmed most recently by Justice O'Connor in the 2005 Lingle opinion. When plaintiffs pursued their, to pursue their federal claims under Supreme Court precedence, plaintiffs was required to ripen their claims in the Montana state courts. They did so and in 2005 the Montana Supreme Court reached a startling decision. It told plaintiffs that unbeknownst to them, they never owned any property. Counsel, my issue with your part of this case rests exactly on the points you've just made. Whether the Montana Supreme Court's decision is right or wrong, it seemed to me to hold that your client lacked a property interest. And it's my understanding of federal takings law that the existence of a property right is a matter of state law. In part, Your Honor, I think, but I don't think exclusively. The Supreme Court made that clear in 2005 in the Gonzales v. Casaro. So, okay, because that's my central problem with your position. If Montana courts have definitively held that as a matter of state law, you have no property to be taken, I'm not sure where that leaves us. Well, I think the definition of property ultimately is a federal question. A state cannot redefine property out of existence and say there was no taking because you never had any property. And that's made clear in several cases. Most recently, in the Gonzales v. Casaro decision with the Supreme Court in 2005, said that the definition of property ultimately is a federal question. Where otherwise, the state could remove themselves from the takings clause entirely by saying you never had any property. And that's, in effect, exactly what happened here. That may be in effect, but what they actually did was say you had some leases and you knew that you had to apply for a permit to mine. And there was no guarantee that you're going to get a permit to mine. And you had no property right in that permission. So, you're left with property that you may say is valueless, but it's of the same value as it had stripped of its permission. I think that's a fundamental error, Your Honor, in the court's analysis. And it's this, the property did not have the same value post-November 1998 that it had before. Indisputably, it was worth many millions of dollars because it was an opportunity for a permit. Now, when an unprecedented and the Montana Supreme Court said unforeseeable initiative comes along and says you are never, ever going to get a permit to do the contemplated type of mining, that destroyed the value of the property because it precluded their only economically viable use. The fact that you need permission, that the permit system's in place, does not mean that a state can come in and say you'll never get a permit. It has to exercise discretion. This removed discretion and therefore destroyed the value of property. So, it wouldn't have, if the state had said, well, we've looked at this and in our discretion, we deny the permit, you wouldn't have a claim or you would? Would not have a takings claim, no. I mean, might have an APA type claim under the state law. There might be a claim in terms of did they follow procedures, but in terms of the federal constitution, would not have a claim if it was a discretionary case-by-case decision. What this did is said, your property is worthless now because the only economically viable type of mining, and this is all has to be taken in this way. Discretionary denial might make it just as worthless. You can't mine. Right. And it's destroyed the only economically viable use of the property. It's rendered nominal value. And that's the Lucas case, really, is what they said. But I guess what I don't see is the difference between a discretionary denial that makes your property valueless and a categorical denial that makes your property valueless. And you're saying I can recover in one case, but not the other. Right. Well, two ways. One, the property has value because there's a chance to seek a permit and a chance to follow state law that allowed you to do it. Second, that opportunity itself is a property interest. And that's clear in the Supreme Court case law, that the opportunity to do something, cause of action, for example. If I have a right to sue somebody, I have no guarantee of recovery. I have a claim, a cause of action. I have a tort claim. I've been injured. And I say that person X, the defendant X, has injured me. That's worth something. That's a cause of action. It's a contingent right, but it has value. Supreme Court in the Montana Railway case back in the late 1800s said a mining prospect, there's no guarantee it's going to be issued, but it's a prospect. It has value in itself. Here now, this Montana initiative comes along and says, you're never going to get it. You have no chance of doing this type of mining. It's taken away an opportunity, an opportunity that itself had value. And because it had that opportunity, the land and the properties had value. No longer do they have value. And that's really it goes back to Pennsylvania called Justice Holmes recognized that point again. Lucas, in 1992, the Supreme Court made clear that a regulation that denies the only economically viable use of property is a regulatory taking. And and that's always the case, even though a state can require a permit system. If it says you can never get a permit and therefore there's no development going to be allowed, whether it's a beachfront home and you want to build a property on it or whether it's a mine in Montana, it's the same analysis. If a law comes along and says you can't do it, that's a taking. Now, does it make any difference what the ground was of the categorical denial? In other words, whether it was considered a noxious use or something like that. Yes. If that use was always prohibited, that's what Lucas says. If it was inherent, it was always a noxious use or always something that was would never have been a permissible use. And that right never adhered in the land. Montana Supreme Court said going back to 1900, this was always a traditionally accepted form of mining still is in Montana for grandfathered mine. So this is not a noxious use that was never adhered in the property rights. But yes, that would be an example under Lucas that it never adhered in the land. But all this gets to the merits of our claim. And obviously, that's what we're asking to be allowed to do in the federal district court. And we have two roadblocks that the district court put up to get us to the merits of the first was sovereign immunity or so-called 11th Amendment immunity. And the second was issue preclusion under the San Remo Supreme Court decision. If I can, I'd like to touch on those two, because that's really the core of the case. We're really asking this court, allow us our day in court, give us our chance to prove our federal takings claim under Pennsylvania Coal, Lucas and Lingle. Give us that day in court. We've never had that day in court in terms of a federal takings claim. Assuming that we could get past Judge Graber's concern and we say that even though the state said you had no property right, that as a matter of federal law, that ought to be looked at fresh.  That is, why isn't it that you might have a federal takings claim that could be asserted in state court, but that the federal courts are barred by the 11th Amendment? Because the takings clause, Judge Gould, is constitutionally unique. And that's recognized by the Supreme Court of First English, which really was the seeds for that argument and seeds for that recognition were planted by Justice Brennan in 1981 in the San Diego gas and electric case. A dissenting opinion there, Justice Brennan joined by Marshall, Stewart, and Powell, I believe. And those, Justice Brennan and Marshall, joined Justice Rehnquist in First English when he really gave effect to that holding as the law of the Supreme Court. And that is this. The takings clause is unique in the sense that unlike any other constitutional provision in the Bill of Rights, it is remedial. It provides a remedy. It doesn't restrict the government from acting the way, say, the First Amendment says, no law restricting free expression shall stand. The Fourth Amendment, no unreasonable search or seizure. Eighth Amendment, no cruel and unusual punishment. It's not prohibitory that way. It is remedial. And there is no other provision in the Bill of Rights, or indeed the Constitution as a whole, that is remedial. And to give effect to that remedial provision, you have to do it by awarding just compensation. And a federal court, obviously, in terms of implementing the supreme law of the land, in the takings clause, if it's going to give effect to it, the only way to do it is to mandate compensation. The First Amendment, obviously, and all the other Bill of Rights provisions, under the ex parte young fiction, if a state is violating those rights, you can come in and name a state officer and say, plaintiff X versus governor of the state, stop abridging my right to free speech. And a federal court can give effect to the federal Constitution by enjoining that. You can't enjoin a taking. When I-137 took effect, we could not, under the takings clause, say, federal court, state court, under the takings clause, block this. Our only remedy was to say, it can take effect, let it take effect. If it's going to take our property, then our remedy is to seek compensation. Obviously, if it's going to take effect, then our remedy is to seek compensation. Roberts. Kennedy. Why can't that remedy be confined to state court? Well, because federal courts are enforcing federal rights. And there is no- They didn't have to. The Constitution doesn't require there to be lower federal courts. Well, our position, Judge Canby, is that the federal Constitution, the takings clause, overcomes state sovereign immunity. But it doesn't create federal courts. It doesn't- Create federal courts. No, Article III. Any federal courts except the Supreme Court. Correct. And Article III, and then Congress, under Article III, that's correct, Congress created lower federal courts, obviously, as the court- Right. So it had a choice, and that, if they had not created any, then you would be confined to state court. With Supreme Court review, that's correct. But obviously, Congress, in Judiciary Act of, was it 1791, 1787, created the lower federal court system. And given that, and the Supreme Court, in creating the Ex Parte Young fiction, said, we're not going to relegate federal claims to federal courts. And, in fact, to overcome Eleventh Amendment immunity in Ex Parte Young, the Supreme Court said, we're going to allow federal courts to enforce the supreme law of the land. And we're going to create a fiction. It's a fiction. And the Supreme Court has acknowledged that. That you can sue a state officer for relief. Why? Because we're not going to relegate you simply to state courts. Well, that fiction doesn't work in the Takings Clause. And it doesn't work because the Takings Clause is unique. And I think that has consequences in terms of the Eleventh Amendment. Mr. Connolly, could you clarify for me, please? Like, did your client assert the federal Takings Claim in state, in the state court? Because I initially thought when I read that your client had said, well, we want the federal court to hold that in reserve. We'll exhaust it, just assert state claims in state court. But then it appeared that in your federal cert petition is quoted as having asserted that there was a federal Takings Claim decided. Yes. Our position on that was very clear in the district court. I appreciate that question, Judge Gould, because I do want to clarify that. District court found, when we initially filed in federal court, filed the federal court action first by a matter of hours, and then filed the state court to comply with the ripening requirement. We specifically reserved on the England case our federal claims for federal court. And we made that clear both in the Montana state court complaint and in our briefing before the Montana Supreme Court, which we've cited and included in the excerpt of record, the relevant page of that, where we advised the court very clearly we were reserving the claims. What the Montana Supreme Court did, I think, fairly well, is they went on to decide not only the state claims that we've raised there under the Williamson County decision, but also decided federal claims. At that point, we were left with a choice. We said, although we believe in the district court, in fact, found that we had properly reserved our federal claims to federal court, the Montana Supreme Court had gone beyond that reservation and had decided federal questions. We filed a cert petition in the footnote on page six, I think, of that cert petition, also in the excerpt of record. We advised the Supreme Court very clearly that we had not raised federal claims, but it appears the Montana Supreme Court had unilaterally gone on to decide federal claims. And in that case, we've said under Supreme Court precedent that whether or not the party has raised and properly preserved federal claims, which clearly we had not, didn't matter if the state court had decided that. So at that point, we said, Supreme Court, you have an opportunity to decide these federal claims, even though we did not raise them. Supreme Court then rejected that opportunity and decided not to hear the case, as typically is certainly numerically the case. And so therefore, we went back to federal court and said, we've reserved these claims. We found that we'd reserved them. We'd never raised any federal claims in state court. And therefore, please hear him. If I could have about a minute and a half, I could reserve that. Certainly. Thank you. Whenever you're ready, sir. Thank you, Judge Graber. And may it please the court. My name is Anthony Johnstone. I represent the state of Montana in this case. Plaintiffs had their day in court. Plaintiffs based their takings claims in state court on federal law, and the state courts decided those takings claims based on federal law. The state supreme court went no further than they were invited to do by the plaintiffs. In a portion of the plaintiffs' Montana supreme court brief that isn't exerted but is in at docket number 40 at Exhibit 2, it cited more than a dozen federal takings claims in their Montana state supreme court brief. The Montana supreme court noted that the venture asserts that there has been a categorical regulatory taking pursuant to the holding in Lucas, a U.S. supreme court case. The court went on to recite not just state law, but the Fifth and Fourteenth Amendments. And decided correctly under federal law that there was no taking. It relied upon federal cases, and it decided both the state and the federal claims. Does your position depend on whether the state court was correct in its holding about the reason I'm asking that is you have started your argument by saying they ruled correctly on the merits. Is that important to our decision, whether they were right or wrong? I believe it's correct, but it is not important to the decision. Because there are two different arguments that the plaintiffs have made here. Was the federal issue decided? And the federal issue was decided. And so that's preclusive whether it was right or wrong. They had review in the U.S. supreme court, as most takings claims are reviewed by petitions of certiorari to state supreme courts. Then there's this other question, though, is if they relied only on Montana law, was Montana law coextensive with federal law? We don't need to get there because Montana's supreme court relied on federal law. In that question as to whether it was coextensive, you still don't need to ask whether it was correct as a matter of federal law, again, because their remedy, if the Montana supreme court or any state court gets the federal law wrong, is to go to the U.S. supreme court. That's the sole remedy. Otherwise, it's precluded. And there's nothing in the full faith and credit statute that gives or makes an exception or allows courts to take a quick look, for example, behind the state court's decision to see whether or not the federal court might have decided it differently. Still, because the Montana supreme court relied on federal law, I don't think you need to get to the point of asking whether or not a federal court might have decided it differently one way or the other. Their remedy for any error in the state supreme court on federal law was a cert petition in grid. And the England reservation no longer works, is that right? Well, that's a function of the case. I think that's right. That's a function of San Remo. In San Remo, there was San Remo is really on all fours. In San Remo, there was an England reservation. They made an England reservation. And in that case, actually, the State claims were much broader than the takings and contract claims that were brought here. There was actually a question as to whether the administrative regulation at issue actually should apply to plaintiffs. There's no doubt in this case that it did. But they had reserved their Federal claims. But just like in San Remo, as the Court observed there and as this Court observed when hearing it, they had phrased their State takings claims in language that sounded in the rules and standards of Federal takings law at San Remo at 331. By doing that, they had given the State courts an opportunity to rule on the issue. They had invited it. And their England reservation was essentially waived. And that is the result of San Remo. Kennedy, I suppose that it's quite likely that if we're proceeding the traditional way, we'd have to reach the Eleventh Amendment first of all, wouldn't we, because that's the jurisdictional problem, I think. I might think so as well, except that this Court and other courts routinely, particularly in this instance, will reach the merits first. And there is some precedent that where jurisdictional issues are particularly complex, I'm not sure. Well, I think it seems to me that Justice Scalia wrote an opinion telling us we shouldn't do that, the so-called phantom jurisdiction. You know, we may or may not have jurisdiction, but we don't have to decide that because the claim has no merit. And we've been told not to do that. Well, I guess I'd look to the Spokley case, for example, another case from Montana where they decided they cited this Court's decision in broad number, which we think is dispositive of the Eleventh Amendment issue, yet address the merits. And that's what other circuits have done in this instance, is they've dealt with res judicata, for example, first, and then Eleventh Amendment may or may not come up. In terms of the Eleventh Amendment ---- Kennedy, what's your best case that did that? For the Eleventh Amendment? Yes, where they went ahead and decided res judicata instead of the Eleventh Amendment. Spokley, I think, is the case, again, from Montana that involved that. I think the San Remo analysis, the preclusion analysis, is, following this Court's lead in Spokley, the only place this Court needs to go to resolve the issue, though. In terms of whether or not they had a protected property right, I think they've made some interesting arguments. Those were all arguments that were made in the State supreme court. Those were all cases that they raised in the State supreme court. And I think, as Judge Graber, you've recognized, and Judge Canby, you've recognized, there was no right to mine here. And that's exactly the sort of detailed administrative decision that San Remo says State courts are particularly good at and gives even more reason as a policy matter, beyond full faith and credit, to defer to State courts. Was there a right to mine in Pennsylvania Coal? Well, I'm unclear there as whether there was a mining permit required before that. We know in Lucas, in the Lucas case, in the second paragraph of the case, the Court said Lucas did not need a permit before the new law to build on the beach. Well, the venture needed a permit. And that permit was discretionary. Should we be? Is it of any significance that the Montana supreme court seems to – the Montana State court seems to have said there's no property right in the permit? And the plaintiffs are saying, well, it's not the taking of the permit that we're so much incensed about. It's the taking of our underlying estate, because it lost all its value once the Is there anything to be made of that distinction? I don't think so. I think that distinction arises from the shifting nature of plaintiff's claim property interest. I think the most recent description of it, and in their cert petition, it was described as the interest was leases and realty that contained with it the opportunity to obtain a mining permit to mine on that property. If that's the case, the fact that there's not a permit is still dispositive of whether they had that opportunity to mine. It's still dispositive of whether the value of those lands have been affected at all. And in this case, they had agreements with the State that they breached before the passage of I-137 by not actively pursuing an operating permit, by not paying for the environmental impact statement services. There are seven grounds that the Montana Supreme Court recited in paragraph 62 of its decision. All of those grounds meant that the State couldn't even get to the point of making the discretionary determination of whether the project was going to be environmentally reasonable, whether it would be detrimental to State lands. They had stopped the process before I-137 intervened, and that itself was part of the Montana Supreme Court's determination that there wasn't a recognizable under the Takens Clause property interest. I know you don't think we have to get to it first, but I guess I'd like to get your position on the Eleventh Amendment issue if we do have to get to it. Well, I think the Eleventh Amendment immunity issue, the sovereign immunity issue, complements the analysis under Sanremo, meaning that if the State courts are open to hear Federal takings claims, as they are here, as Montana's State courts are, Spokely is an example of that, then there is no reason to bring a claim to the Federal court. Now, those claims in Federal court for money damages from the State itself are barred by the Eleventh Amendment, by the sovereign immunity recognized in those cases. That was this Court's holding in Broughton Lumber, and that's how all of the other circuits have come out when there is a State court open to hear those claims. And that's the case here. So that's why Sanremo and the Eleventh Amendment analysis fit together relatively well. Those claims belong in State court. Those claims for compensation against the State don't belong in Federal court. There's a miss – this may be kind of an involved point, but does Alden change any of this? The – Alden says that the Eleventh – the spirit of the Eleventh Amendment makes the State immune in its own courts, and that raises the question whether if the self-executing nature of the compensation clause overcomes it in State court, why doesn't it overcome it in Federal court? Well, Judge Canby, they have raised – that's an interesting point. And that's a point on which there's much commentary. But in terms of Eleventh Amendment immunity, Alden doesn't matter here, because Alden involved a case where the State courts were closed to those claims. And that's not the case here. I think the Manning case, which they cite from United States. Alden closed the State courts. Well, and it hasn't closed the State courts here. In fact, Williamson County, it would be pretty surprising if State courts were closed, given that Williamson County says that that's exactly where your takings claims need to start. First English, I think, which is where the clearest statement of the self-executing nature of the Fifth Amendment and the takings clause comes from, well, First English applies directly to this case. First English says that State courts have to consider the Federal nature of the takings clause. They can't limit takings remedies to something less than what the Federal takings clause requires. And so, again, all of these cases fit together. Alden – now, the Manning case distinguishes Alden because Alden involved Congress's Article I powers. I don't think we need to get there. I think it's enough to say that for all the commentary that they've cited, most of it says simply that the State courts must be available. None of it's authoritative. And the only articles that they cite that say that whatever the availability of the State courts, you should be able to bring it in Federal court admits that that would require a reinterpretation of the Eleventh Amendment. So I think their Eleventh Amendment arguments are based on something less than authoritative sources. And I think that's exactly, within San Remo, the way the way that the takings claims ought to work. The Supreme Court determined that, as we've said, that the State could not even get to the point of making a determination of whether they could mine or not, which was dispositive. And I think you're aware of an assert petition that they'd admitted, not only that the Montana Supreme Court decided the Federal issues, footnote one, but they, in fact, made an entirely separate argument saying we probably can't bring these claims in Federal court because of San Remo. I think all of those are candid admissions, premonitions, I guess, of where they are to relitigating those claims. They had their day in court. The Montana Supreme Court considered their Federal claims at their invitation. And that has a preclusive effect because, as San Remo says, there is no takings exception to full faith and credit. If we have no further questions, I'll take a seat. I think we don't. Thank you, sir. We'll hear again from Mr. Connolly. Thank you, Your Honor. I think the State has conceded the point that the takings clause overcomes sovereign immunity. I think that's conceded. They say if the State provides a remedy, the State has to provide a remedy, they say. The question, therefore, becomes, Judge Canvey, does Alden allow that dichotomy by saying it overcomes the takings clause by itself without any congressional implementation, overcomes sovereign immunity in State courts. State courts, you must hear Federal takings clause claims, Federal courts, you cannot. Alden precludes that dichotomy. Alden said it would be even more offensive to overcome sovereign immunity solely in a State court's own courts. That would be more offensive to not the 11th Amendment, per se, but pre-ratification sovereignty that the Supreme Court says underlies the 11th Amendment. So if that dichotomy doesn't work, then I think to say a Federal claim can only be heard in State court does two things wrong. It is more offensive to State sovereignty, and it undermines the protection of the Federal judiciary enforcing the Bill of Rights. In terms of the argument, and Judge Canvey, you mentioned, England Reservation doesn't work anymore. I submit it does work for claim preclusion, and claim preclusion has never been argued here. It's never been argued that we are claim precluded from here. The issue is only issue preclusion. Under San Remo, issue preclusion only applies if State and Federal law are coextensive, and this Court has determined and has reviewed the coextensiveness of those in San Remo and in the Dodd cases. We ask this Court to hold that there's no 11th Amendment immunity, and to say that there's no issue preclusion because the laws are not coextensive, and give us our day in court. Thank you, Counsel. The case just argued is submitted, very interesting arguments by both of you, and we will now take about a 10-minute recess. All rise. This Court now stands in recess.
judges: Canby, Graber, Gould